UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ATLANTIC SOUNDING CO. INC. | CIVIL ACTION |
| VERSUS | NO: 06-9688 |
| TIMOTHY F. PETREY | SECTION: "S" (4) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Atlantic Sounding Co., Inc.'s "Motion for Summary Judgment" is **DENIED**. (Document #66.)

**IT IS FURTHER ORDERED** that Great Lakes Dredge & Dock Company, LLC's "Motion for Summary Judgment" is **DENIED** as to Timothy F. Petrey's claim of negligence and **GRANTED** as to his claim of unseaworthiness. (Document #67.)

### I. BACKGROUND

On September 26, 2006, Timothy F. Petrey was employed as a seaman by Atlantic Sounding Co., Inc. (Atlantic), a wholly owned subsidiary of Weeks Marine, Inc., performing services as a deckhand on the M/V TUG THOMAS, a vessel owned and operated by Atlantic. The M/V THOMAS was towing a barge in the area of Mobile Bay. A bridle ran from the front of the barge to the vessel in a V-shape with two chains. The vessel hooked its tow cable onto a

pennant wire that is connected to the bridle.  A crewboat passed the M/V THOMAS, threw a big wake, and caused the starboard chain bridle to break.  The vessel continued pulling for about an hour and a half.

When Captain Ray Schneck came on duty, he turned the vessel around and pulled alongside the barge, starboard to starboard; and the cable on the chain became entangled on the timber bitts on the bow of the barge.  Captain Schneck sent Petrey onto the barge with a crowbar to try to pry the chain and cable out from between the timber bitts.  As Petrey stepped over the bitts, the cable popped, caught him across his left shin and flipped him.  Petrey's prosthetic hip popped out of its socket as he hit the barge floor.

Petrey's surgeon placed him in a brace for a recuperative period.  However, it was later determined that he required a revision surgery to replace a portion of the prosthetic hip.[1]  He underwent surgery and returned to work as a forklift driver in 2007.

Atlantic filed a complaint for declaratory judgment under admiralty and maritime jurisdiction, Federal Rule of Civil Procedure 9(h), and 28 U.S.C. § 2201.  Atlantic seeks a declaration that it is not liable for maintenance and cure because Atlantic would not have hired Petrey if he had not concealed material medical facts within his post-offer medical examination, specifically that he had right hip replacement surgery prior to his employment with Atlantic.  Petrey filed a counterclaim under the Jones Act, 46 U.S.C. § 30106 and the general maritime law

---

[1] Petrey required a total right hip replacement in 1995 or 1996 because of avascular necrosis.  On January 17, 2002, Petrey had a revision of right total hip replacement because there was a cyst in the hip joint that was caused by the deteriorating bone.

2

against Atlantic, alleging Jones Act negligence, unseaworthiness, and a claim for maintenance and cure. In its answer, Atlantic alleges that it would not have hired him as a deckhand if it had known of his prosthetic hip because Petrey was restricted by his pre-existing condition from engaging in heavy duty labor.

Petrey filed a third-party complaint against Great Lakes Dredge & Dock Company, LLC of Louisiana (Great Lakes), the owner and operator of the GL65 dump scow barge where the accident occurred. He alleged that Great Lakes was negligent, and the barge was unseaworthy. Great Lakes filed a cross-claim against Atlantic, alleging that any damages sustained by Petrey were caused by the negligence of Atlantic. Atlantic filed a cross-claim against Great Lakes for indemnity and/or contribution, alleging that Petrey's injuries were caused by the construction, configuration, and arrangement of the barge.

Atlantic and Great Lakes filed motions for summary judgment. Atlantic seeks summary judgment on the claims of maintenance and cure and Jones Act negligence, but does not address the unseaworthiness claim. Great Lakes seeks summary judgment on the claims of negligence and unseaworthiness.

## II. BACKGROUND

### A. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of

3

establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B. Atlantic's motion for summary judgment**

    **1. Maintenance and cure**

Atlantic contends that Petrey cannot recover maintenance and cure benefits because he willfully concealed his total, right-hip-replacement surgery. Atlantic argues that Petrey was required to undergo a post-offer medical examination as standard procedure in the employment process, and he concealed his medical history on the "Report of Medical History." Atlantic contends that Petrey would not have been hired as a deckhand if he had not concealed the hip replacement.

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." Jauch v. Nautical Services, Inc., 470 F.3d 207, 212 (5th Cir. 2006). "The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment." Id. "A seaman may recover

4

maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed." Id. (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir. 1968)). "In cases involving pre-existing conditions, courts distinguish between non-disclosure and concealment." Id. "If a vessel owner does not require a pre-employment medical examination or interview, a seaman must disclose his condition when in [the seaman's] own opinion the shipowner would consider it a matter of importance." Id. "If, however, the vessel owner does require the seaman to submit to medical examination as part of its hiring process, a seaman who misrepresents or conceals any material medical facts, disclosure of which is plainly desired, risks forfeiture of his maintenance and cure benefits." Id. "Concealmen of one's condition will not preclude recover of maintenance and cure under all circumstances." Id. "The concealment defense will only prevail if the vessel owner can show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit." Id. "If the vessel owner would have employed the seaman even had the requested disclosure been made, concealment will not bar the seaman's recovery of maintenance and cure." Id.

Petrey contends that he is not barred from receiving maintenance and cure because he did not conceal his hip replacement. He argues that Captain Schneck and the crew were aware of his hip condition for about a year prior to the accident. He contends that William Davis, the chief engineer on the M/V THOMAS who worked with Petrey for two years, provided a statement that

everyone on the vessel knew that Petrey had an artificial hip. Moreover, Petrey states in his deposition that he carelessly filled out the questionnaire, reviewing only the first couple of questions, because they were rushing to complete the paperwork and fax it. However, he testified that he told the physician who performed the pre-employment physical about the hip surgery. Alternatively, Petrey contends that there are genuine issues of material fact as to whether Atlantic would have employed him because everyone on board the vessel knew of his hip condition, and he was continually permitted to work .

Petrey has produced sufficient evidence of the existence of a genuine issue for trial on his claim for maintenance and cure.[2] Accordingly, there are disputed issues of material fact, and Atlantic's motion for summary judgment on the issue of maintenance and cure is denied.

**2. Negligence**

Atlantic contends that Petrey cannot produce evidence that Atlantic did not provide Petrey with a safe place to work or that it or its employees negligently performed a single act that caused his injury. Atlantic contends that Petrey was performing a deckhand's task of walking along a deck to check and free lines and argues that an experienced seaman should be no stranger to this simple duty.

Under the Jones Act, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury. See Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (en banc). The employer is held to a standard of ordinary prudence under the

---

[2] In the facts before the court, it does not appear that there is a connection between the prosthetic hip and the injury complained of. Because of other outstanding issues, the court does not reach that issue.

6

circumstances. Id. "Though a plaintiff alleging claims under the Jones Act must prove the traditional elements of negligence–duty breach, notice, and causation–the standard of proof for causation when asserting negligence under the Jones Act is relaxed, sometimes termed 'featherweight.'" Fasold v. Delaware River & Bay Authority, 117 Fed. Appx. 836, 838 (3rd Cir. 2004); see Thomas J. Schoenbaum, Admiralty and Maritime Law, Vol. 1, § 6-22 (4th ed. 2004).

Petrey contends that there are disputed issues of material fact as to Atlantic's liability. He argues that Atlantic is liable in negligence because he was ordered to perform an unsafe procedure without help or proper equipment. He contends that Captain Schneck ordered him to perform the unsafe task of single-handedly untangling a two and one-half inch cable from around the timber bitt with just a pry bar and improper lighting. Petrey states in his deposition that he had never performed such work before and that the removal of such a heavy cable required two men.

Petrey argues that the Captain should have known that he was unable to handle the task alone. Petrey presents the deposition testimony of William Davis that everyone aboard knew that he was taking medication for his hip at the time of the incident. Davis testified that the Captain and everybody in authority warned Petrey not to overmedicate because there were many days that he took too much medicine for his pain. The Captain testified that he had conversations with the "office" more than once about Petrey's abilities and the things that were going on.

Petrey has produced sufficient evidence of the existence of a genuine issue for trial on his claim that Atlantic was negligent. Accordingly, there are disputed issues of material fact, and

Atlantic's motion for summary judgment on the issue of negligence is denied.

**C. Great Lakes's motion for summary judgment**

    **1. Negligence**

Great Lakes contends that Petrey cannot put forth evidence that Great Lakes was negligent in a manner that would have caused or contributed to his accident and injury. Great Lakes argues that, even if the entry to the barge was blocked or obstructed, Petrey was not prevented from "easily" boarding the barge, and any blockade did not cause his injury. Great Lakes further argues that the tow line, even if faulty, had nothing to do with causing the accident or injury.

Maritime tort law governs the question of whether Great Lakes owed a duty to Petrey. "The analysis of a maritime tort is guided by general principles of negligence law." In re Signal Intern., LLC, 579 F.3d 478, 491 (5th Cir. 2009) (internal quotation and citation omitted). "Under general tort principles, a tortfeasor is accountable only to those to whom a duty is owed." Id. "Duty is measure by the scope of the risk that negligent conduct foreseeably entails." Id. (internal quotation and citation omitted). "The rest [of foreseeability] is whether the harm that does occur is within the scope of danger created by the defendant's negligent conduct." Id. (internal quotation and citation omitted). In addition to the duty owed, a plaintiff must demonstrate a breach of duty, injury, and a causal connection between the defendant's conduct and the plaintiff's injury. Canal Barge Co., Inc. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000).

Petrey contends that Great Lakes was negligent because it breached its duty to provide

reasonable care under the circumstances by failing to maintain and inspect the towing rigging before it was used, failing to remove unnecessary rigging from the barge, and failing to provide adequate lighting. Petrey testified that Great Lakes arranged the chains, fishplate, and pennant wire. All the crew of the M/V/ THOMAS did was hook up to their tow wire. Petrey testified that the safety aisle was blocked, requiring him to step through the timber bitts to perform his assigned task. Davis testified that there were pieces of the broken chain and bridle closer to the stern of the boat in line with the bow of the barge, but it did not block access to the barge.

Petrey has produced sufficient evidence of the existence of a genuine issue for trial on his claim that Great Lakes was negligent. Accordingly, there are disputed issues of material fact, and Great Lakes's motion for summary judgment on the issue of negligence is denied.

**2. Unseaworthiness**

Great Lakes contends that Petrey's claim of unseaworthiness is foreclosed by Smith v. Harbor Towing & Fleeting,, Inc., 910 F.2d 312 (5th Cir. 1990). In Smith, the Court of Appeals held that "a Jones Act seaman, who possesses the full range of traditional seamen's rights and remedies, cannot maintain a Sieracki[3] seaworthiness action against a vessel on which he is not a crew member." Id. at 315.

Petrey may not assert a Sieracki unseaworthiness clam against Great Lakes. Petrey has a variety of remedies as a Jones Act seaman: a Jones Act negligence claim against Atlantic, an unseaworthiness claim against Atlantic as the vessel owner, a maintenance and cure claim

---

[3] In Seas Shipping v. Sieracki, 66 S.Ct. 872, 875-77 (1946), the Supreme Court rejected the notion that the vessel owner's duty to furnish a seaworthy vessel extended only to those maritime workers employed by the vessel owner.

against Atlantic, and a negligence claim in maritime tort for Great Lakes breach of duty of reasonable care.

Accordingly, there are no disputed issues of material fact, and Great Lakes is entitled to judgment as a matter of law on the unseaworthiness claim.

New Orleans, Louisiana, this __10th__ day of November, 2009.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**