UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ATLANTIC SOUNDING CO. INC.**            **CIVIL ACTION**

**VERSUS**                                **NO: 06-9688**

**TIMOTHY F. PETREY**                     **SECTION: "S" (4)**

## FINDING OF FACT AND CONCLUSIONS OF LAW

Timothy Petrey ("Petrey") was a seaman employed by Atlantic Sounding Co. Inc. ("Atlantic"). On September 26, 2006, Petrey was part of the crew on the tug, the M/V Thomas owned by Atlantic, when he was injured while taking the GL65 dump scow barge under tow to transport dredge spoil from Mobile Bay to a point offshore in the Gulf of Mexico off the coast of Alabama where the spoil would be dumped.

Atlantic filed a complaint for declaratory judgment under admiralty and maritime jurisdiction, Federal Rule of Civil Procedure 9(h), and 28 U.S.C. § 2201. Atlantic seeks a declaration that it is not liable for maintenance and cure because Atlantic would not have hired Petrey if he had not concealed material medical facts within his post-offer medical examination, specifically that he had right hip replacement surgery prior to his employment with Atlantic. Petrey

filed a counterclaim under the Jones Act, 46 U.S.C. § 30106 and the general maritime law against Atlantic, alleging Jones Act negligence, unseaworthiness, and a claim for maintenance and cure.[1]

The case was tried as a bench trial, and memoranda supporting the parties' respective positions were submitted to the court.

**1. Maintenance and Cure**

Atlantic contends that Petrey cannot recover maintenance and cure benefits because he willfully concealed his total right-hip-replacement surgery. Atlantic argues that Petrey was required to undergo a post-offer medical examination as standard procedure in the employment process, and he concealed his medical history on the "Report of Medical History." Atlantic contends that Petrey would not have been hired as a deckhand if he had not concealed the hip replacement.

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." Jauch v. Nautical Services, Inc., 470 F.3d 207, 212 (5th Cir. 2006). "The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment." Id. "A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman

---

[1] Petrey filed a third-party complaint against Great Lakes Dredge & Dock Company, LLC of Louisiana, the owner and operator of the GL65 dump scow barge where the accident occurred. He alleged that Great Lakes was negligent, and the barge was unseaworthy. Great Lakes filed a cross-claim against Atlantic, alleging that any damages sustained by Petrey were caused by the negligence of Atlantic. Atlantic filed a cross-claim against Great Lakes for indemnity and/or contribution, alleging that Petrey's injuries were caused by the construction, configuration, and arrangement of the barge. Great Lakes has been dismissed from the case.
 In his post-trial memorandum Petrey does not argue his entitlement to recovery for unseaworthiness. That claim is therefore considered abandoned.

knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed." Id. (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir. 1968)). "In cases involving pre-existing conditions, courts distinguish between non-disclosure and concealment." Id. "If a vessel owner does not require a pre-employment medical examination or interview, a seaman must disclose his condition when in [the seaman's] own opinion the shipowner would consider it a matter of importance." Id. "Concealment of one's condition will not preclude recovery of maintenance and cure under all circumstances." Id. "The concealment defense will only prevail if the vessel owner can show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit." Id. "If the vessel owner would have employed the seaman even had the requested disclosure been made, concealment will not bar the seaman's recovery of maintenance and cure." Id.

Petrey contends that he is not barred from receiving maintenance and cure because he did not conceal his hip replacement. He argues that Captain Schneck and the crew members were aware of his hip condition for about a year prior to the accident. He relies on the statement of William Davis, the chief engineer on the M/V THOMAS who worked with Petrey for two years, that everyone on the vessel knew that Petrey had an artificial hip. Moreover, Petrey states in his deposition that he carelessly filled out the questionnaire, reviewing only the first couple of questions, because he was rushing to complete the paperwork. Further, he testified that he told the physician who performed the pre-employment physical about the hip prosthesis.

Petrey was hired as a deckhand by Atlantic and continued his work with them for two years. Petrey argues that Atlantic had actual or constructive knowledge of his prosthetic hip because: (1) he told Captain Scheck of the prosthetic hip immediately upon reporting for duty as a deckhand; (2) he discussed his prosthetic hip with the crew on numerous occasions; (3) he informed Rudy Wohl, the marine operations manager, of his prosthetic hip; and, (4) he told the examining physician in his pre-employment physical that he had a prosthetic hip and that the twelve to fourteen inch surgical scar was obvious to the physician.

### a. Intentional misrepresentation or concealed medical facts.

Petrey admits that in filling out his questionnaire he checked "no" to every question regarding his medical history, prior surgeries, and other medical issues directly related to his right hip. He also failed to reveal his use of prescription medication.[2] Petrey also asserts he was in a hurry to complete the paperwork and that he overlooked the questions about his health and medical history.

Based on the evidence presented, particularly the testimony of Thomas Langun, the vice president of risk management for Atlantic, that he learned of the hip replacement on the date of the subject fall, and Rudy Wohl, Atlantic's marine operations manager, that he was never told by Petrey that he had hip replacement surgery, the court concludes that Petrey intentionally misrepresented or concealed his hip prosthesis from his employer. The first McCorpen element is satisfied.

### b. Materiality of concealed facts to employer's decision to hire plaintiff

The physician who conducted the post-offer medical examination, Dr. John A. Hamilton, testified that had he known of Petrey's hip prosthesis he would not have cleared Petrey as capable

---

[2] Petrey was on prescription pain medication during his entire employment with Atlantic.

4

of performing the duties of a deckhand.  Likewise, Langun testified that had he known of the prosthesis and prescription medication consumption, he would not have hired Petrey as a deckhand. The court finds the concealed facts were material to the employer's decision to hire Petrey.  The second element of McCorpen is satisfied.

### c. Connection between the concealed medical facts and the alleged injury

The injury allegedly sustained in this incident was a dislocation of the right hip prosthesis. The surgery performed following this accident was replacement of all of the prosthetic hip components. Thus, there is a connection between the concealed medical facts and the injury. Thus, the third element of the McCorpen defense is satisfied.

Thus, Petrey is precluded from recovering maintenance and cure.  Atlantic is entitled to judgment that it does not owe maintenance and cure benefits to Petrey.

## 2. Jones Act negligence

Under the Jones Act, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury.  See Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (en banc).  The employer is held to a standard of ordinary prudence under the circumstances. Id.  "Though a plaintiff alleging claims under the Jones Act must prove the traditional elements of negligence–duty, breach, notice, and causation–the standard of proof for causation when asserting negligence under the Jones Act is relaxed, sometimes termed 'featherweight.'" Fasold v. Delaware River & Bay Authority, 117 Fed. Appx. 836, 838 (3rd Cir. 2004); see THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, Vol. 1, § 6-22 (4th ed. 2004).

Atlantic owed Petrey, a seaman, a fundamental duty under the Jones Act to provide him with a reasonably safe place to work. Ivy v. Security Barge Lines, Inc., 585 F.2d 732 (5th Cir. 1978); Foster v. Destin Trading Corporation, 700 So. 2d 199, 204-204 (La. 1997). Likewise, a seaman, such as Timothy Petrey, is obligated to act with ordinary prudence under the circumstances. This includes his reliance upon his employer, Atlantic, to provide a safe work environment. While Petrey and his employer, Atlantic, are both held to a standard of ordinary prudence under the circumstances, Petrey is entitled to recovery under the Jones Act if his employer's negligence is the cause, in whole or in part, of his injury. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc). The terms "slightest" and "featherweight" have been used to describe the reduced standard of causation between the employer's negligence and the employee's injury. Id. at 335; Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1352 (5th Cir. 1988).

Atlantic contends that Petrey cannot produce evidence that Atlantic did not provide Petrey with a safe place to work or that it or its employees negligently performed a single act that caused his injury. Atlantic contends that Petrey was performing a deckhand's task of walking along a deck to check and free lines and argues that an experienced seaman should be no stranger to this simple duty.

Petrey argues that Atlantic is liable in negligence because he was ordered to perform an unsafe procedure without help or proper equipment. He contends that Captain Schneck ordered him to perform the unsafe task of single-handedly untangling a two and one-half inch cable from around the timber bitt with only a pry bar under improper lighting conditions. Petrey states in his deposition that he had never performed such work before and that the removal of such a heavy cable required

6

two men. Petrey argues that Captain Schneck should have known that he was unable to handle the assigned task alone.

### a. Cause of the fall: Spontaneous failure of prosthetic hip or "popping" of fouled tow cable?

Petrey alleges that Atlantic was negligent in the following particulars:

While the barge was under tow, the chain leading from the fishplate to the starboard bow of the barge broke. The chain formed a part of the barges' towing bridle. In spite of the broken chain, Captain Schneck continued towing the barge for another hour and a half. As Captain Schneck maneuvered the barge to the edge of the navigation fairway to make way for the passage of another vessel the tug's tow wire became fouled on the forward double timberhead bow bitt of the barge.

Captain Schneck then ordered Petrey to attempt to untangle the cable from the timberhead bitt. As Petrey walked toward the forward bitt, Petrey was unable to use a "safety walkway," because of debris strewn along the walkway, but walked along the starboard edge of the deck of the barge to the bitt. He was required to step over the bitt to attempt to free the fouled touring cable with the pry bar. As he stepped between the tow timberheads, the cable, under heavy tension, suddenly moved upward, striking Petrey and causing him to fall onto the deck.

Atlantic argues that Petrey never reached the starboard bow bitt, but fell 20 feet from the starboard bow bitt because his prosthetic hip failed. Captain Schneck testified that he never saw Petrey trip over anything, and reported in his description of the accident ". . . Tim's leg gave way while walking on barge." Engineer William Davis testified that Petrey told him that his hip "came out of the joint."

The court finds that Petrey has failed to prove by a preponderance of the evidence, even under the featherweight standard of proof of causation under the Jones Act that the negligence of

7

Atlantic caused his injury, in whole or in part. Considering the evidence presented, the court finds that more probably than not Petrey fell when his prosthetic hip spontaneously failed. This finding is consistent with the testimony of the witnesses and with the medical evidence that the useful life of the prosthesis is ten years, and that Petrey's prosthesis was about ten years old, and with the testimony that Petrey made complaints to his doctor of his hip "popping" in August 2005, one month before this incident.

**3. Conclusion**

Petrey is precluded from recovering maintenance and cure because he willfully concealed and intentionally misrepresented medical facts which were material to Atlantic's decision to hire Petrey.

Petrey is not entitled to recover for Jones Act negligence because the dislocation of his prosthetic hip was not caused by the negligence of his employer.

New Orleans, Louisiana, this  31st  day of March, 2010.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**